UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br>v.<br><br>DAVID THEODORE CARR,<br><br>                Defendant. | CASE NO. 2:23-cr-00025-TL-2<br><br>ORDER ON MOTION FOR REVIEW OF DETENTION ORDER |

This matter comes before the Court on Defendant David Theodore Carr's Motion for Review of Magistrate Judge's Detention Order (Dkt. No. 111) ("Motion for Review"), appealing the April 11, 2023, detention order (Dkt. No. 88). Having considered the Indictment (Dkt. No. 1), the Pretrial Report (Dkt. No. 70), the Government's motion for detention (Dkt. No. 75) and supporting memorandum (Dkt. No. 79), letters in support of Mr. Carr (Dkt. No. 80), the audio of the April 11 detention hearing (Dkt. No. 87), the Government's response (Dkt. No. 117), Mr. Carr's reply (Dkt. No. 119), and the relevant record, the Court DENIES the Motion for Review.

## I. BACKGROUND

On February 22, 2023, a grand jury indicted Mr. Carr on one count of Conspiracy to Distribute Controlled Substances in violation of 21 U.S.C. §§ 841(a)(1) and 846.[1] *See* Dkt. No. 1 at 1–2. The charge concerns an alleged conspiracy to distribute controlled substances over an unknown length of time involving several indicted co-defendants. *Id.* On March 2, Mr. Carr was arrested at his home in Arizona, at the same time a search warrant was executed at that address. Dkt. No. 117 at 13. Pretrial Services in Arizona recommended that Mr. Carr be released. *See* Dkt. No. 111 at 1. On March 9, the Arizona magistrate judge held a detention hearing and ordered that Mr. Carr be detained. Dkt. No. 56-3 (detention order).

Mr. Carr was subsequently transferred to this District. *See* Dkt. No. 56-4 (order of commitment). Pretrial Services recommended that Mr. Carr be released with conditions. Dkt. No. 70 at 6. The Government moved for detention. Dkt. No. 75; *see* Dkt. No. 79. On April 11, the magistrate judge held a detention hearing and ordered that Mr. Carr be detained, finding that Mr. Carr "has failed to overcome the presumption that he is both a flight risk and a danger to the community." *Id.* at 1.

Mr. Carr now appeals the April 11 detention order and seeks his release pending trial on "any condition that the Court sets in order to mitigate any perceived risk, including home detention or GPS monitoring." Dkt. No. 111 at 2; *see* 18 U.S.C. § 3145(b). The Government opposes. Dkt. No. 117.

---

[1] The Government states that Mr. Carr is also charged with 21 U.S.C. § 841(b)(1)(A). Dkt. No. 117 at 1. However, as the Court reads the indictment, Mr. Carr is charged only with §§ 841(a)(1) and 846 because he is not listed alongside certain co-defendants where § 841(b)(1)(A) is specified in Count One and no amounts are listed for any of the drugs in the paragraph relating to him.

## II. LEGAL STANDARD

### A. Standard of Review

A person who is ordered detained by a magistrate judge "may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." 18 U.S.C. § 3145(b). A district court reviews the detention order *de novo*. *United States v. Koenig*, 912 F.2d 1190, 1191–93 (9th Cir. 1990).

### B. Presumption of Detention

Under the Bail Reform Act ("the Act"), 18 U.S.C. § 3141, *et seq*., where a court finds probable cause that a defendant has committed certain types of offenses, there is a presumption of detention.[2] 18 U.S.C. § 3142(e)(2)–(3). Although the Ninth Circuit has not ruled on the issue, almost every Circuit has held that an indictment is sufficient to trigger the presumption. *See, e.g.*, *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996); *United States v. Stricklin*, 932 F.2d 1353, 1355 (10th Cir. 1991); *United States v. Contreras*, 776 F.2d 51, 55 (2d Cir. 1985); *cf. Kaley v. United States*, 571 U.S. 320, 328 (2014) (holding that a proper indictment "conclusively determines the existence of probable cause" (quoting *Gerstein v. Pugh*, 420 U.S. 103, 117 n.19 (1975))).

However, the presumption is subject to rebuttal by a defendant. 18 U.S.C. § 3142(e)(3). To rebut the presumption, a defendant need only produce "some evidence" that there are conditions that would reasonably assure his appearance and community safety. *United States v. Rhule*, No. C20-0105, 2020 WL 5984072, at *3 (W.D. Wash. Oct. 8, 2020) (quoting *United States v. Jessup*, 757 F.2d 378, 384 (1st Cir. 1985), *abrogated on other grounds by United States v. O'Brien*, 895 F.2d 810, 812–14 (1st Cir. 1990)); *see United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010) ("Although a defendant's burden of production 'is not heavy,' he must introduce

---

[2] One set of offenses carries a presumption of detention as to safety only. 18 U.S.C. § 3142(e)(2). Another set of offenses carries a presumption as to both nonappearance and safety. 18 U.S.C. § 3142(e)(3).

at least some evidence." (quoting *United States v. Stricklin*, 932 F.2d 1353, 1355 (10th Cir. 1991))); *United States v. Rodriguez*, 950 F.2d 85, 88 (2d Cir. 1985) ("[A] defendant must introduce some evidence contrary to the presumed fact in order to rebut the presumption."). Although the presumption shifts the burden of production to the defendant, the burden of persuasion remains with the government. *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008). Finally, when a defendant rebuts the presumption, "the presumption 'remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g).'" *Id.* (quoting *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986)).

C. **Detention Standard**

The Act requires that a court release a criminal defendant on personal recognizance or on an unsecured appearance bond before trial unless there is a determination that such release "will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b). This default requirement is in accord with the principle that "[i]n our society, liberty is the norm, and detention prior to trial . . . is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). The Ninth Circuit cautions that "[o]nly in rare cases should release be denied." *United States v. Santos–Flores*, 794 F.3d 1088, 1090 (9th Cir. 2015) (*citing United States v. Motamedi*, 767 F.2d 1403, 1405 (9th Cir. 1985)). Further, "doubts regarding the propriety of release are to be resolved in favor of the defendant." *Id.* If a court determines that such release will not reasonably assure the defendant's appearance and the safety of the community, the court must impose "the least restrictive further condition, or combination of conditions," that will reasonably assure these

goals. 18 U.S.C. § 3142(c)(1)(B). The Act only requires detention where a court finds that no such condition or combination or conditions can do so.³ 18 U.S.C. § 3142(e)(1).

If the Government moves for detention pursuant to 18 U.S.C. § 3142(f) and a defendant is eligible for a detention hearing,⁴ then the court must determine whether there are conditions of release that reasonably assure two goals: "the appearance of the defendant as required" and "the safety of any other person and the community." 18 U.S.C. § 3142(g). In making this determination, a court considers the following factors: (1) the nature and circumstances of the offense charged, including whether the offense falls into certain enumerated categories; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *Id*.

To obtain pretrial detention, the government bears the burden of showing by a preponderance of the evidence that there are no conditions that will reasonably assure the

---

³ The plain language of the Act may suggest that a court must make findings as to *both* nonappearance and safety before it can order detention. *See* 18 U.S.C. §§ 3142(e)(1) (requiring detention if judicial officer finds no condition or combination of conditions reasonably assure appearance "and" safety), 3142(f) (requiring a hearing to determine whether condition or combination of conditions will reasonably assure appearance "and" safety). Nevertheless, courts presented with this issue have understood nonappearance and safety to be independent grounds for detention. *See, e.g.*, *United States v. Fortna*, 769 F.2d 243, 249 (5th Cir. 1985); *United States v. Daniels*, 772 F.2d 382, 383 (7th Cir. 1985); *United States v. Sazenski*, 806 F.2d 846, 848 (8th Cir. 1986); *see also United States v. Samuels*, No. C18-0144, 2018 WL 2304787, at *3 (D.D.C. May 21, 2018) ("[E]ven if a defendant is not considered a flight risk, his or her danger to the community alone is sufficient reason to order pretrial detention, and vice versa." (citing *Salerno*, 481 U.S. at 755)).

⁴ Here, in its motion for detention, the Governments asserts that Mr. Carr is eligible for a detention hearing "because this case involves . . . [d]rug offense with a maximum sentence of ten years or more" and "[s]erious risk the defendant will flee." Dkt. No. 75 at 1–2; *see* Dkt. No. 79; 18 U.S.C. §§ 3142(f)(1)(C), 3142(f)(2)(A). Mr. Carr does not contest his eligibility.

Order on Motion for Review
of Detention Order - 5

defendant's appearance as required, and by clear and convincing evidence that there are no conditions that will reasonably assure the safety of any other person and the community. *See* 18 U.S.C. § 3142(e)(1); *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991).

### III.   DISCUSSION

To make its determination, the Court first evaluates the presumption of detention, including whether the presumption has been successfully rebutted, and then considers the factors enumerated in 18 U.S.C. § 3142(g).

**A.   Rebuttal of the Presumption of Detention**

Mr. Carr is charged by indictment with one count of Conspiracy to Distribute Controlled Substances, 18 U.S.C. §§ 841(a)(1) and 846. Dkt. No. 1 at 1–2. The Parties agreed at arraignment that Mr. Carr faces up to 20 years of imprisonment, among other penalties. Audiotape: Initial Appearance and Arraignment, Dkt. No. 73, at 2:45–3:42 (on file with the Court). Therefore, the presumption of detention is triggered.[5] 18 U.S.C. § 3142(e)(3)(A); *Smith*, 79 F.3d at 1210. However, the Court finds that Mr. Carr rebuts the presumption.

**1.   Risk of Nonappearance**

Mr. Carr's burden of production is fairly low, and he has provided "some evidence" to rebut the presumption as to the risk of nonappearance. *Jessup*, 757 F.2d at 384. Mr. Carr is 43 years old and was born in California, where he lived for most of his life. Dkt. No. 70 at 2. He has lived in Arizona since 2017, and his oldest daughter has lived with him since 2020.[6] *Id.*

---

[5] The Government contends that a 10-year mandatory minimum sentence applies to this matter. *See* Dkt. No. 117 at 1–2. Mr. Carr contends that he is not charged in the Indictment with any of the specific quantity allegations and is thus not subject to the mandatory minimum. Dkt. No. 119 at 1–2. As noted above, the Court reads the Indictment as only charging Mr. Carr with violations of § 841(a) and 846, which do not carry a mandatory minimum. *See supra*, n.1. But regardless of how the Indictment is read, the presumption of detention applies because Mr. Carr faces "a maximum term of imprisonment of ten years or more" under the Controlled Substances Act.

[6] The Government points out that Mr. Carr has "no ties to this District other than his role in the drug conspiracy that operated here." Dkt. No. 117 at 19. But it is not necessarily a problem that Mr. Carr lacks ties to *this* District, as ties

at 1–2. Mr. Carr also has strong family ties: He has two stepbrothers who also live in Phoenix, as well as a stepsister and his mother, who live in California, all of whom have regular contact with him.[7] Dkt. No. 70 at 2. He is in reasonably good physical and mental condition. *Id.* at 4. While Mr. Carr has one confirmed failure to appear, it is from 2000 when he was 19 years old.[8] Dkt. No. 70 at 4. Finally, regarding a 2016 arrest that led to conviction, counsel represents that he spoke to Mr. Carr's bail bondsman for that matter, who states that Mr. Carr appeared as directed after he posted bail. *See* Audiotape: Detention Hearing, Dkt. No. 87, at 12:28–12:53 (on file with the Court).

2.     **Safety of Any Person or the Community**

Mr. Carr has also rebutted the presumption as to safety. The Government focuses on the nature of the offense and the fact that Mr. Carr was caught with firearms. Dkt. No. 117 at 20–22. Mr. Carr points out that his residence in Arizona did not contain any controlled substances, and that drug seizures involved other alleged co-conspirators, including Bryce "Benji" Hill who is detained in another District. Dkt. No. 111 at 7–8. He also points out that there is no evidence that he "has ever used weapons violently or in connection with a drug offense in the past." *Id.* at 7. Although the Government highlights "hundreds of calls related to drug trafficking and violence" overheard by law enforcement (Dkt. No. 117 at 3), there is no evidence that Mr. Carr was violent or threatened violence to anyone as part of his alleged involvement in the conspiracy. Finally, while Mr. Carr has a criminal history, it is limited: one prior conviction occurred in 1999 when he was 19 years old, and the other occurred in 2016. Dkt. No. 70 at 4–5.

---

to a "community" under the Act include "both the community in which the charges are brought *and* also a community in the United States to which the defendant has ties." *United States v. Townsend*, 897 F.2d 989, 995 (9th Cir. 1990) (emphasis added).

[7] Mr. Carr provides letters of support from his mother, his stepsister, the mother of one of his daughters, and one of his daughters. *See* Dkt. No. 80. The Court notes that it is unclear if any of the authors understand the nature and circumstances of the offense with which Mr. Carr is charged.

[8] No sentence is reported for this alleged conviction for failure to appear. *See* Dkt. No. 70 at 4 (stating "sentence not available").

ORDER ON MOTION FOR REVIEW
OF DETENTION ORDER - 7

Therefore, the Court finds Mr. Carr rebuts the presumption as to both nonappearance and safety. However, the presumption remains as an evidentiary finding in favor of detention. *See Hir*, 517 F.3d at 1086. The Court now turns to the evidence relevant to factors listed in § 3142(g) and will weigh the presumption along with the factors.

**B.   The § 3142(g) Factors**

   **1.   Nature and Circumstances of the Offense Charged**

Mr. Carr is charged with Conspiracy to Distribute Controlled Substances, undoubtedly a serious offense that inflicts great harm on the community. 18 U.S.C. §§ 841(a), 846. This is an offense that "involves . . . a controlled substance," which is identified by the Act. 18 U.S.C. § 3142(g)(1). The Government alleges that Mr. Carr conspired with several co-defendants to distribute significant amounts of controlled substances, though the Government does not identify how long the conspiracy was in operation or how long Mr. Carr might have been a participant. *See generally* Dkt. No. 1. It argues that the evidence shows Mr. Carr participated in the conspiracy by renting properties to be used as stash houses for his co-conspirators while using a fake identity. *See* Dkt. No. 117 at 2. As the Government states, "his participation is not passive. He's not just renting apartments as like a real estate agent who doesn't know what's going on. He's fully aware of the scope of the conspiracy." Audiotape: Detention Hearing, at 7:53–8:02.

Therefore, the Court finds that the nature and circumstances of the offense charged weigh in favor of detention.

   **2.   Weight of the Evidence**

The Government devotes most of its briefing to this factor, which it describes as "beyond overwhelming." Dkt. No. 117 at 21; *see id.* at 2–15. It provides excerpts of transcripts of intercepted calls between Mr. Carr and co-conspirator Mr. Hill. *See id.* at 4–12. When a search

warrant was executed at Mr. Carr's residence, the Government recovered three firearms,[9] ammunition, multiple scales, a cash counter, and documents bearing Mr. Carr's fake identity and other apparent identities. *See* Dkt. No. 117 at 13–14.

Mr. Carr contends at some length (albeit unconvincingly to the Court) that the intercepted calls are susceptible to innocent interpretations.[10] Dkt. No. 111 at 8–13. Despite all the evidence the Government has and may ultimately bring to bear in this case, Mr. Carr is presumed innocent before trial, and nothing in the Court's analysis may be construed as modifying or limiting that presumption. 18 U.S.C. § 3142(j). Further, the Ninth Circuit has repeatedly declared that the weight of the evidence is the least important factor, and the statute neither requires nor permits a pretrial determination of guilt. *Gebro*, 948 F.2d at 1121. *See also Hir*, 517 F.3d at 1090; *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986); *Motamedi*, 767 F.2d at 1408.

Therefore, while the Court finds that the weight of the evidence weighs in favor of detention, it treats this factor as the least important.

### 3. The History and Characteristics of Mr. Carr

This factor presents a somewhat mixed picture. As noted above, Mr. Carr has community and family ties, as well as a limited criminal history. *See supra*, Section III.A.1. At the same time, Mr. Carr was sparing and inconsistent in describing to Pretrial Services his employment history and financial resources—basic details about his own life of which he should be well aware—and the information he provided conflicted with the information provided by his mother

---

[9] According to the Government, one of the firearms "appeared to be used by Carr's daughter." Dkt. No. 117 at 14. However, Mr. Carr's daughter also reported that Mr. Carr possessed firearms that were seized when he was arrested. Dkt. No. 70 at 3.

[10] The Government represents that Mr. Carr gave "a partial – albeit misleading – confession to criminal activity post-*Miranda*" (Dkt. No. 117 at 21) although the content of the confession is unclear from the pleading.

ORDER ON MOTION FOR REVIEW
OF DETENTION ORDER - 9

and his daughter.[11] Dkt. No. 117 at 19; Dkt. No. 70 at 3. For example, he reported to Arizona Pretrial Services that he was employed as a silent partner in United Family Clinic West but he reported to Washington Pretrial Services that he had been an employee in the marketing department for a business called 88 Management for two years. *Id.* He told Washington Pretrial he leases a BMW but his daughter reported he owns a BMW as well as a Mercedes located in California.[12] Dkt. No. 70 at 3. He also made other apparently deceptive statements, like denying a prior conviction for domestic violence when his criminal history reflects otherwise (*compare* Dkt. No. 70 at 4 *with id.* at 5) and claiming there were no firearms at his residence when three were recovered (*compare* Dkt. No. 70 at 3 *with* Dkt. No. 117 at 13–14). *But see supra* n.8. And Mr. Carr had the firearms in his residence while he was and continues to be under a court order prohibiting him from purchasing or possessing a firearm. Dkt. No. 117 at 14; Dkt. No. 70 at 5. He also reports at least three international trips in the last year. *Id.* at 2.

What is equally troubling to the Court is Mr. Carr's alleged skill of deception and his ability to act on those skills. The Government alleges that Mr. Carr's role in the conspiracy involved the use of a fake identity to facilitate the conspiracy by renting stash houses and other properties to store controlled substances. Dkt. No. 117 at 2. Documents recovered by the Government demonstrate the use of this fake identity, including a fake California ID. *Id.* at 12–15. Indeed, documents in multiple different names other than his real identity or the "Zachary Banks" fake identity used to rent apartments were seized from Mr. Carr's apartment at

---

[11] At arraignment, counsel noted that Mr. Carr's income as listed in his financial affidavit (*see* Dkt. No. 71) should be corrected to reflect a per-paycheck amount, not per month as written. *See* Audiotape: Initial Appearance and Arraignment, at 1:45–2:15. It is possible that a similar misunderstanding explains the apparent discrepancy between reported incomes, though Mr. Carr does not directly address this point.

[12] The Court is less concerned with whether Mr. Carr owns or leases cars than the fact that he has ready access to another car that is in another state in which he does not reside and that he failed to report.

the time of his arrest. *Id.* at 14. The Court also notes that Mr. Carr is associated with a second Social Security number and date of birth, which he does not explain. Dkt. No. 70 at 5.

Moreover, while Mr. Carr is presumed innocent, his attempts to explain the evidence against him reflect poorly on his credibility and character. For example, Mr. Carr claims he did not know Mr. Hill was using the apartments to traffic drugs. Dkt. No. 111 at 8. But it strains common sense to think that Mr. Carr did not know there was an illegal purpose for the use of the apartments and that—even accepting he did not know what the illegal activity might have been—he was contributing to that illegal activity given that he used a fake identity to secure the apartments. Further, in arguing that he is "not a regular fentanyl dealer" because Mr. Hill had to "describe[ ] basic information about fentanyl" to him (Dkt. No. 111 at 12), Mr. Carr essentially admits that he had conversations with Mr. Hill about fentanyl and suggests that he was in possession of fentanyl on at least the occasion when the conversation took place. While no drugs were found in his residence at the time of his arrest (some weeks after Mr. Hill's arrest), firearms, multiple scales, a cash counter, and other documents in multiple different names were seized. Dkt. No. 117 at 14.[13]

These facts do not supply confidence that Mr. Carr will comply with court orders or be forthcoming with the Court or Pretrial Services. Therefore, the Court finds that the history and characteristics of Mr. Carr weigh in favor of detention.

### 4. Danger to Any Person or the Community

The relevant inquiry is whether the Government can prove by clear and convincing evidence that Mr. Carr poses a *future* harm of danger to the community. *See Salerno*, 481 U.S. at 751 ("Under the [Act] . . . a judicial officer evaluates the likelihood of future

---

[13] None of these facts were known to Pretrial Services. *See* Dkt. No. 117 at 21.

dangerousness . . . ."). Mr. Carr argues that because Mr. Hill has been arrested, any danger that existed no longer exists in terms of an alleged working relationship. Dkt. No. 119 at 4. Under this theory, anytime a co-defendant is arrested, danger would be neutralized and this factor would weigh in favor of release. The Court is not swayed by this argument, which minimizes his participation and role in the alleged activity. Mr. Carr also argues that he has never "used weapons violently or in connection with a drug offense in the past." Dkt. No. 111 at 7. But danger to the community is not only triggered by the use of weapons in connection with a drug offense. Nevertheless, there are no allegations that Mr. Carr was involved in any conversations discussing violence, and he has a limited criminal history.

Yet as noted above, the Government recovered three firearms and ammunition when a search warrant was executed at Mr. Carr's residence. Dkt. No. 117 at 13–14. Mr. Carr does not argue that he was entitled to possess those firearms by virtue of a permit, or otherwise explain why the firearms were present in his home. On the contrary, Pretrial Services reports that Mr. Carr is under a California protective order until 2027, which prohibits him from purchasing or possessing a firearm. Dkt. No. 70 at 5. And that prior court order did not stop Mr. Carr from obtaining or having multiple firearms in his residence. His unlawful possession of firearms, combined with his active misrepresentation about them and his purported involvement with the distribution of controlled substances, leads the Court to find that a consideration of danger to any person or the community weighs in favor of detention.

### IV.  CONCLUSION

For the reasons explained above, the Court finds that the Government has met its burden by a preponderance of the evidence that there is no combination of conditions of release that will

reasonably assure Mr. Carr's appearance.[14] Accordingly, the Court DENIES Mr. Carr's Motion for Review of Magistrate Judge's Detention Order (Dkt. No. 111).

Dated this 18th day of July 2023.

Tana Lin
United States District Judge

---

[14] Because the Court finds that the Government has met its burden for detention on the ground of nonappearance, the Court need not reach the alternative ground of safety.

ORDER ON MOTION FOR REVIEW
OF DETENTION ORDER - 13